NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 19, 2012[*]
Decided December 3, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| Nos. 11-2365 & 11-2469 | |
| | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| RYAN MILLER, *Plaintiff-Appellant,* | |
| *v.* | Nos. 11 C 1127 & 11 C 2151 |
| MARCUS HARDY, et al., *Defendants-Appellees.* | Samuel Der-Yeghiayan, *Judge.* |

**O R D E R**

In these consolidated appeals, Illinois inmate Ryan Miller challenges the dismissals of his separate lawsuits filed under 42 U.S.C. § 1983. In both actions the district court denied Miller's application to proceed *in forma pauperis* (or "IFP") and then dismissed the suit when he failed to pay the filing fee. We conclude that the court abused its discretion.

---

[*]After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the appellant's brief and the records. *See* FED. R. APP. P. 34(a)(2)(C).

Miller filed both lawsuits in early 2011 claiming unconstitutional conditions of confinement at Stateville Correctional Center. The first suit stems from a four-day period in September 2010 when his cell was without running water. The second concerns peeling paint, contaminated water, black mold, inadequate space, and birds loose inside the prison.

The district judge denied Miller's application to proceed IFP and dismissed his first lawsuit because Miller had not used the form IFP application and financial affidavit prescribed by local rule in the Northern District of Illinois. *See* N.D. Ill. R. 3.3(c). The judge advised Miller that he could seek to reinstate the action either by paying the $350 filing fee within a month or by reapplying for IFP using the prescribed forms. Miller chose the latter option. He reported that his only income was a $10 monthly payment from the Illinois Department of Corrections but acknowledged receiving two cash gifts totaling $550 about four months before he filed his complaint. These gifts, according to Miller, had been rare events and would "never happen again." He also submitted a transaction statement for his inmate trust account showing that his balance was about $54 when he filed his lawsuit and that he had spent $532.73 at the prison's commissary and another $40 on music and a magazine subscription during the previous six months. A prison employee certified that Miller's monthly deposits had averaged $101.22 during those months. The district court again denied IFP and also denied Miller's motion to reinstate the action, finding that he was "not sufficiently indigent" because he had received the cash gifts after his claim arose and therefore could have paid the full filing fee. Miller moved for reconsideration, explaining that he already had spent his gift money when he decided to file his lawsuit. The court denied this motion also, reasoning that Miller's explanation came too late and that his decision to spend his money on "non-necessities of life" did not entitle him to proceed IFP.

Miller's second lawsuit was filed about a month after the first, and after he had resubmitted his IFP application in the first suit. His IFP application in the second suit essentially duplicated the revised application from the first suit. Once again the district court pointed to Miller's receipt of $550 in gifts and, on that basis, concluded that he was not "sufficiently indigent to warrant granting" IFP. Once again he was given a month to pay the filing fee, and when he did not, the court dismissed the action.

On appeal Miller argues that the district court erred by finding that he was not indigent despite the fact that he had very little income and insufficient funds in his trust account. We agree. An inmate litigant who spends his money on other things after filing a complaint may not proceed without paying the initial partial filing fee assessed by the court, *see* 28 U.S.C. § 1915(b)(1); *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997), but Miller filed these suits months after spending the bulk of the cash gifts. The district court did not cite (and the appellees do not identify) any authority for the proposition that an

inmate cannot be indigent simply because he had enough money to pay a filing fee at some point after his claim arose. The relevant inquiry is the state of the inmate's finances at the time of filing. *See, e.g., Robbins*, 104 F.3d at 898 (explaining that inmate's "current poverty would not authorize continuation" of action "if he had the resources to comply with the statute at the time the Act called for payment"); *Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002) ("If the prisoner lacks the means to pay the fee at the time of filing, the PLRA provides for assessment and subsequent collection of the fees as funds become available to him."); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002) ("For prisoners unable to pay the filing fee at the time of filing, the statute provides for the assessment and, when funds exist, the collection of an initial fee." (internal quotation marks omitted)); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) ("When considering a motion filed pursuant to § 1915(a), the only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." (citation and internal quotation marks omitted)).

The district court's understanding that Miller had the financial resources to pay two filing fees in full is refuted by the record; if he had spent nothing more in the four months after receiving his gifts, Miller would have saved $625, well short of the $700 the court expected him to pay. Moreover, even if we ignore the second lawsuit, the statutory formula would have required assessing an initial partial filing fee of just $90.22 if, when Miller filed his complaint, he had been found indigent and his account balance had included the entire $625. Miller may have been shortsighted, and he may not have spent wisely if possible litigation was on the horizon. But that is why the statute penalizes spendthrifts by looking, when it's time to calculate an initial partial filing fee, not at the inmate's current account balance but at the higher of the average monthly balance or average monthly deposits for the six months before the lawsuit was initiated. *See* 28 U.S.C. § 1915(b)(1); *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997) ("Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state." (citing *Lumbert v. Illinois Dept. of Corrections*, 827 F.2d 257, 259 (7th Cir. 1987)).

It is true that § 1915 does not compel a district court to permit an indigent prisoner to proceed without prepayment of fees, *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir. 2007), and thus an inmate who attempts to evade paying fees may forfeit the privilege of proceeding IFP so as not to profit from his deception. *See Campbell*, 481 F.3d at 969; *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992); *Collier v. Tatum*, 722 F.2d 653, 655–56 (11th Cir. 1983); *Evans v. Croom*, 650 F.2d 521, 525 (4th Cir. 1981). But here the district court did not suggest that Miller intended by his commissary purchases to avoid the obligation to prepay the filing fees in his lawsuits. Nor did the court give Miller the opportunity to explain his

withdrawals, which, in opinions issued before the Prison Litigation Reform Act, some appellate courts had made a prerequisite to denying IFP status to an indigent plaintiff on the basis of willful evasion. *See Collier v. Tatum*, 722 F.2d 653, 655–56 (11th Cir. 1983); *Evans v. Croom*, 650 F.2d 521, 525–26 (4th Cir. 1981). Thus, on the record before us, there is no basis to conclude that Miller forfeited the opportunity to proceed IFP.

The judgments dismissing Miller's lawsuits are **VACATED**, and the cases are **REMANDED** for further proceedings consistent with this order. On remand, the district court should assess and begin collecting an initial partial filing fee for each of Miller's lawsuits using the procedures set out in 28 U.S.C. § 1915(b)(1). Although the required prepayments may exceed his current account balance, Miller may not proceed until these fees have been paid.