In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1859

DAROUSH EBRAHIMI,

*Plaintiff-Appellant*,

*v.*

MOHAMMED SIDDIQUI, *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:18-cv-01350 — **Nancy J. Rosenstengel**, *Chief Judge*.

———————————

ARGUED FEBRUARY 16, 2024 — DECIDED AUGUST 21, 2024

———————————

Before RIPPLE, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Daroush Ebrahimi, a prisoner serving a life sentence in an Illinois state prison, commenced this action against, as relevant to this appeal, Wexford Health Sources, Inc. ("Wexford"), a company providing medical services to inmates, and Dr. Mohammed Siddiqui, a physician employed by Wexford. The district court granted summary judgment to the defendants. Wexford and Dr. Siddiqui then

submitted a bill of costs for deposition transcripts totaling $5,243.45. Mr. Ebrahimi opposed the bill of costs, relying on his indigency status. The district court nevertheless awarded costs in full. It explained that because the documentation Mr. Ebrahimi submitted established that he had "ample funds," he had not met his burden of showing that he was incapable of paying the costs then or in the future.

Mr. Ebrahimi now appeals the district court's imposition of costs. Based on the record before it, the district court did not err in awarding costs to Wexford and Dr. Siddiqui. We therefore affirm the assessment of costs against Mr. Ebrahimi.

# I

## BACKGROUND

Mr. Ebrahimi is serving a life sentence in an Illinois state prison. In July 2018, he brought this action in the United States District Court for the Southern District of Illinois. His complaint named as defendants Wexford, Dr. Siddiqui, the Illinois Department of Corrections, and various prison officials. He generally alleged medical mistreatment at the Menard Correctional Center in Illinois. Mr. Ebrahimi filed a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915 and attached documentation showing that his prison trust fund account contained $233.17 on June 13, 2018.[1] The district

---

[1] As part of his in forma pauperis motion, Mr. Ebrahimi stated, under the penalty of perjury, that he had not received any income in the last twelve months, including from gifts or inheritances. As required under 28 U.S.C. § 1915(a)(2), he also attached a statement of his inmate trust fund account for the six-month period preceding the filing of his complaint. That statement showed Mr. Ebrahimi received a monthly payroll credit ($9.18, $10, ( … continued)

court granted the motion. After the district court screened the complaint as required by 28 U.S.C. § 1915A, it assigned Mr. Ebrahimi counsel. Later, after that counsel withdrew, Mr. Ebrahimi was appointed new counsel. He retains that same counsel on appeal.

All parties moved for summary judgment. The district court granted summary judgment to the defendants and denied summary judgment to Mr. Ebrahimi.

Following the judgment in their favor, Dr. Siddiqui and Wexford jointly submitted a bill of costs, totaling $5,243.45. They sought reimbursement for deposition transcripts. Mr. Ebrahimi opposed the bill of costs. He submitted a declaration stating that his financial status "remain[ed] the same today as it was on July 2, 2018," when he filed his complaint, and that, as of October 2022, his inmate trust fund account had a balance of less than $1,000.[2] He explained that he was incapable of paying the costs at that point or in the future.

After filing the objection, Mr. Ebrahimi submitted supplemental documentation showing the balance of his prison trust fund account and the transactions made within the account for a two-and-a-half-month period from July 13, 2022, to September 30, 2022. That documentation demonstrated that Mr. Ebrahimi's account contained $1,663.70 on July 13, but that the account had been depleted to $936.84 by September 30.

---

$2.38, $8.84, $10, and $3.74), as well as a payment of $150 from the Pakistan Embassy.

[2] R.170-1 ¶ 3.

The district court granted the bill of costs in its entirety. Although the court noted that Mr. Ebrahimi had been granted in forma pauperis status at the beginning of the lawsuit, it pointed to the balance of his account in July 2022 ($1,663.70) and observed that he had "received ample funds" since the litigation had begun in 2018 (when his account contained $233.17). *Ebrahimi v. Baldwin*, No. 18-cv-1350, 2023 WL 3275046, at *1 (S.D. Ill. April 3, 2023). Thus, in the court's view, Mr. Ebrahimi "ha[d] not demonstrated that he [could not] pay the costs in this case now or at some point in the future." *Id.*

Mr. Ebrahimi appealed the award of costs.

## II

## DISCUSSION

### A.

We begin by setting forth the general principles governing in forma pauperis designation and its relation to an award of costs. Litigants in federal court generally must pay a fee when initiating litigation. 28 U.S.C. § 1914 (requiring parties instituting a civil action to pay a filing fee). Those who cannot afford to make this payment in full at the outset may file a motion for leave to proceed in forma pauperis. 28 U.S.C. § 1915(a)(1).[3] In forma pauperis status may be requested in any civil or criminal action or on appeal. 10 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice*

---

[3] Our colleagues in some of the other circuits have noted explicitly that 28 U.S.C. § 1915(a) applies to prisoners and non-prisoners seeking in forma pauperis designation alike, despite its "prisoner possesses" language. *Hymas v. United States Dep't of the Interior*, 73 F.4th 763, 766 n.3 (9th Cir. 2023); *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) (collecting cases).

*& Procedure* § 2673, at 312 (2014). The grant of in forma pauperis status waives only the *prepayment* requirement. "[T]he litigant continues to owe the fees." *Whitaker v. Dempsey*, 83 F.4th 1059, 1060 (7th Cir. 2023) (Wood, J., in chambers). If the litigant is a prisoner, the procedure for making such payments by installment is set forth in 28 U.S.C. § 1915(b).[4]

Notably, an in forma pauperis designation does not automatically exempt a litigant from paying costs awarded after judgment. 28 U.S.C. § 1915(f)(1) ("Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings … ."). The inclusion of indigent individuals within the general requirement that costs be awarded to the prevailing party is designed to discourage frivolous claims and to treat litigants alike despite their financial status. Wright, Miller & Cooper, *supra*, § 2667, at 216–17; *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994) (explaining that "unsuccessful indigent litigants are not automatically shielded from the imposition of costs against them" because costs "serve[] the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike"). If costs are assessed against a prisoner, payments are made "in the same manner as is provided for filing fees under [28 U.S.C. § 1915(a)(2)]." 28 U.S.C. § 1915(f)(2)(B).

---

[4] Under § 1915(b)(1), the prisoner must pay an initial partial filing fee of 20% of the greater of the average monthly deposits to his trust fund account, or the average monthly balance in his account for the six-month period prior to the filing of the complaint or notice of appeal. The remainder of the fee is paid in monthly installments of 20% of the prisoner's previous month's income, as long as the account balance exceeds $10. *Id.* § 1915(b)(2).

The general presumption, therefore, is that in all proceedings and for all litigants, the prevailing party will recover costs. *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019). Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[5] This presumption "is difficult to overcome." *Richardson*, 926 F.3d at 893 (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997)). Although the "ultimate decision rest[s] within the district court's discretion," the court "must award costs unless it states good reasons for denying them." *Weeks*, 126 F.3d at 945.

We have recognized that the losing party's indigency can constitute a good reason for denying costs. *See Rivera v. City of Chicago*, 469 F.3d 631, 635–36 (7th Cir. 2006). But we have required the district court to engage in a two-step analysis when considering whether to deny costs because of indigency. *Lange v. City of Oconto*, 28 F.4th 825, 846 (7th Cir. 2022). First, the district court must make the "threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future." *Id.* (quoting *Richardson*, 926 F.3d at 893). The losing party must make "an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Isley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). That party must provide the court with "sufficient documentation," such as an affidavit or other documentary evidence detailing income, assets, and a schedule of expenses.

---

[5] The term "costs," as used in Rule 54(d), is defined in 28 U.S.C. § 1920. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). That statute authorizes deposition costs, including transcripts. *Id.*

*Rivera*, 469 F.3d at 635. Second, the district court must "consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case." *Lange*, 28 F.4th at 846 (quoting *Rivera*, 469 F.3d at 635).

## B.

With these principles before us, we now turn to an analysis of Mr. Ebrahimi's argument on appeal. We review the district court's decision to impose costs for an abuse of discretion. *Lange*, 28 F.4th at 845.[6]

## 1.

The district court conducted only the first step of the two-step analysis. It went no further because it concluded that Mr. Ebrahimi had not shown that he was incapable of paying costs. Mr. Ebrahimi now submits that the district court erred in reaching this conclusion. He explains that his prison trust fund balance was high ($1,663.70 on July 13, and $936.84 on September 30) because he had received a COVID-19 stimulus payment. In his view, because the stimulus payment "does not represent a regular source of income" and because he otherwise "has no job or regular income source," the district court erred in imposing costs.[7]

---

[6] *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) ("When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous.").

[7] Ebrahimi Opening Br. 7.

But the district court did not have before it any information suggesting Mr. Ebrahimi's account balance was inflated due to receiving a stimulus payment.[8] When considering the bill of costs, the district court had the following information available: Mr. Ebrahimi had $233.17 in his inmate trust fund account in July 2018. Four years later, on July 13, 2022, Mr. Ebrahimi had $1,663.70 in his trust fund account. By September 30, he had $936.84 in his account. In the two-and-a-half-month span from July 13 until September 30, Mr. Ebrahimi spent $751.56 at the commissary and $1.30 at the library, and received two payroll payments of $13 each.

On these facts, the district court was entitled to conclude that Mr. Ebrahimi was capable of paying costs. He failed to carry his burden of showing he was incapable of paying costs. *Cf. Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015) (holding no abuse of discretion for district court to award costs to prevailing party when losing party "failed to provide an affidavit or any other documentary evidence to support" the conclusion that he was unable to pay).

**2.**

Mr. Ebrahimi also submits that the district court did not explain sufficiently its rationale for imposing costs. We cannot accept this contention. To be sure, "[i]n making a discretionary decision, a court must present an explanation for its choice

---

[8] At oral argument, counsel for Mr. Ebrahimi stated that counsel was unable to receive the inmate trust fund account statement until after the objection to the bill of costs was due. In such a scenario, we fail to see why counsel did not file a motion for an extension of time. We also fail to see why counsel did not file a motion for reconsideration and seek to supplement the record with this information.

sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion." *Lange*, 28 F.4th at 849–50 (quoting *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 491 (7th Cir. 2007)). And we have "re-iterate[d] our mandate that district court judges provide at least a modicum of explanation when entering an award of costs." *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998). The district court has done so here. It emphasized that Mr. Ebrahimi had "substantial funds" despite submitting "an affidavit indicating that his financial status remains the same as it was when he sought pauper status" and that Mr. Ebrahimi's "account records clearly demonstrate that he has received ample funds since 2018." *Ebrahimi*, 2023 WL 3275046, at *1. This explanation is sufficient.[9] The district court examined the information available to it and explained its rationale adequately for our review. It has met its requirement to provide "at least a modicum of explanation."[10]

---

[9] This case is therefore different from those where the district court gave no explanation. *See, e.g.*, *Krocka v. City of Chicago*, 203 F.3d 507, 518–19 (7th Cir. 2000) (remanding for an explanation because the district court "did not make a record of its reasons for denying the Defendants' request for costs"); *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998) (explaining that reviewing the district court's award of costs "is an impossible exercise given the utter lack of explanation for the award").

[10] *Weihaupt v. American Medical Association*, 874 F.2d 419, 430–31 (7th Cir. 1989), relied on by Mr. Ebrahimi, is not to the contrary. There, we vacated the district court's award of costs because the court had failed to determine whether the requested costs were allowable and reasonable. *Id.* Notably, that award of costs included $3,086.60 in photocopying costs, which we observed would have been equal to 12,346 copies at $0.25 per copy. *Id.* ( … continued)

**Conclusion**

For these reasons, we affirm the judgment of the district court.

AFFIRMED

---

at 431. We remanded to the district court to determine if that number of copies was "reasonable in amount and necessity to the litigation." *Id.*